And we'll move to our next case this morning, Grady v. Truitt. Ms. Mannion. May it please the court, counsel. My client's prior counsel failed to raise a critical and meritorious issue on appeal that would have made all the difference to my client. She failed to challenge the sufficiency of the evidence to convict Mr. Grady as a first degree murderer, as a shooter and a killer, when we know that the evidence was insufficient to sustain that conviction. We know this because- But do we know this? I mean, this gets us into the law regarding inconsistent verdicts. And the Supreme Court has said when they're inconsistent, Ms. Powell, we don't know which one was right. So even putting to one side ways that you might, in fact, reconcile these verdicts, let's just assume for the sake of argument that they're not reconcilable. You still don't know which one is right. And so what we have to do is apply this test, you know, did appellate counsel at the state level bypass a more promising argument, namely the one that you're making, in favor of less promising arguments? And the Illinois courts seem to have thought that he wouldn't have gotten anywhere on this inconsistent verdicts point. So on that point, Your Honor, it is true that cases such as Powell from the Supreme Court and People v. Jones, frankly, from Illinois, both say that when you have a situation of independent counts pled in a single indictment, they could have been brought as separate indictments. They weren't, right? Where you have separate counts brought within an indictment or separate counts against a co-defendant, for example, that there's some speculation there. You don't really know which one was the right verdict, right? The acquittal or the conviction. Respectfully, we would suggest that that's not the situation. This situation is more akin to the federal authorities that we point out in our papers. This is cases from the Fifth and Sixth Circuits, U.S. v. Gonzalez, U.S. v. Randolph. And what those cases say is, hey, we're actually not in Powell territory. What we have is not so much inconsistent verdicts. The better framing of this is an internal inconsistency. The state chose to present a substantive offense and bring a sentencing enhancement on top of that as a special allegation or a special interrogatory. And when the jury made a finding, a negative finding in response to that special interrogatory, you can't just disregard it. You need to give it effect. That's what Gonzalez says, and that's what Randolph says. And that's true whether it negates an element of the crime, which is what we see in some of the federal cases, the drug conspiracy cases, or where it negates the theory of guilt being prosecuted. That's the Gonzalez case. And we would respectfully submit that the state here pursued a single theory of guilt, which was he was the shooter. My client was the shooter. And when the jury found in no uncertain terms in response to a jury finding, in response to the special allegation, that no, he was not, the state failed to prove that, then that finding had to give effect. And it gave effect. It was internally inconsistent with and cannot coexist with the general verdict finding. There was an aider and a better alternative submitted to the jury. So Your Honor, do you have something, Judge Brokman? No. That was my question as well. Sorry. Yes, there was an instruction on accomplice liability as an aider and a better. We would suggest that that cannot save the conviction or mean that counsel is necessarily constitutionally adequate in this scenario for a couple of reasons. First, the tendering of that instruction we think was improper. That admittedly is not before Your Honors this morning. But the state said again and again and again, he is the shooter. He is not the accomplice. The other, the co-defendant is the accomplice. So under, there should not have been an accomplice liability to begin with. The reason for that, and it brings me to my second and more important question. Did Grady object to the jury instruction? It was a contested tendering, Your Honor. It was there, though, however, and we're not disputing that. Right, right. See, that's the problem. You know, I can follow a lot of your argument, but once we have the jury permitted to find accomplice liability, all of the pieces seem to fall in order and it seems a jury could have found that the two of them were both involved and that even if, you know, Mr. Grady wasn't the trigger man, he was sufficiently implicated for the accomplice liability and so everything fits. And it's not a separate offense. I mean, under Illinois law, actually, it's common. It's not a separate offense, so it was charged. Yes, so it was in the instruction, but we would submit, Your Honors, that if you look at the transcripts, the only competent evidence that would support aiding and abetting theory for felony murder is the testimony of the co-defendant, Aaron Bronson. Right, but you know, we all have seen these kinds of co-defendants. Mr. Bronson had every incentive to say whatever he thought he could get away with, but nonetheless, the jury can, we trust juries to evaluate those things. Yes, and we would submit that the special verdict finding actually shows that the jury did not believe Mr. Bronson, that his whole narrative was Mr. Grady, my co-defendant was the shooter, he shot him. What do we know from the jury finding? The jury didn't believe that. They didn't buy into that narrative. He was so significantly impeached and incredible that we know from the jury they didn't believe him. Nonetheless, they didn't enter a general verdict finding against my client. We would believe that, we would submit, rather, that there was no competent evidence that would support an aiding and abetting for felony murder. So can we get back to sort of the Sixth Amendment lens? Because I think you don't want to fall into the trap of thinking that we're here to look at the merits in a way. We're here to consider whether appellate counsel was constitutionally insufficient for failing to present this. And the only reason we're in this other discussion is because there wouldn't be any prejudice if it was a doomed argument anyway. That's correct, Your Honor. And we believe what made this so obvious and so clearly stronger than the technical that negated the theory of the offense being prosecuted by the state. It was essentially the state's sole theory of guilt. He was the shooter. The jury found he was not. That was an obvious discrepancy combined with the lack of other eyewitness testimony and the lack of any direct forensic or other direct evidence that would support a finding of guilt against Mr. Grady. That was an obvious thing that should have been raised on appeal and it was not. And we think that it prejudiced Mr. Grady in the extreme. So before you sit down, I would like your comment on the state's argument that this argument that you're now making is procedurally defaulted. On that point, Your Honor, the claim that has been presented throughout the state court proceedings, throughout post-conviction, was always a Strickland claim based on insufficient evidence to sustain a first-degree murder conviction. Part and parcel of that was the inconsistent verdicts. Now was there different emphases throughout the post-conviction papers? Yes. But we think that that is cognizable and is defensible under cases from this court such as Sweeney, which basically says so long as the substance is there, reformulation is okay. We cannot expect a carbon copy of the claim to be preserved throughout the state. We believe the state courts, it has been fairly presented and in any event, it was waived in the district court below. As we know, procedural default is an affirmative defense. Instead of claiming procedural default before Judge Roland, the state decided to engage in the merits. Therefore, it would have been waived. Thank you. If it's okay with Your Honors, I'd like to reserve the rest of my time for rebuttal. That's fine. Mr. Fisher. Good morning, Your Honors. Counselor, may it please the court, Assistant Attorney General Garson Fisher for the respondent. As Your Honors have noted, there are two independent bases on which this court could deny habeas relief in this case. First, because the specific basis for ineffective assistance of appellate counsel that petitioner advances in front of this court was not one that was pursued through a complete round of state court review. And second, because the underlying basis for the current ineffective assistance of appellate counsel claim, namely that petitioner's murder conviction should be overturned based on inconsistent verdicts, is meritless. Indeed, the claim was undoubtedly raised in the state post-conviction trial court. That court held that counsel was not ineffective because that underlying claim was meritless. And because counsel cannot be ineffective for failing to raise a meritless claim, the trial court's holding that counsel is not ineffective here is not objectively unreasonable. Under Illinois law, inconsistent verdicts does not provide any basis for reversing a conviction. The Illinois Supreme Court has held that. The Illinois courts have since held you can't get around that rule by recasting your inconsistent verdicts claim as a sufficiency of the evidence claim. And indeed, they've held that that rule applies even in a case like this one where even if there was no suggestion at all of a co-defendant or an accomplice. So, under Illinois law, for example, if you had a case where there was clear video evidence placing a victim in an otherwise abandoned parking lot, the defendant approached the victim, pulled out a gun, shot and killed the victim, walked away, multiple eyewitnesses, let's say that that was what had happened, and the jury found the defendant guilty of murder but declined to apply the firearm sentencing enhancement under the special interrogatory, that would not provide a basis under Illinois law to reverse the murder conviction. There's a couple reasons for that. One, we don't know that that means that the jury found that the defendant didn't kill the victim. Perhaps the jury, as the Illinois Supreme Court has noted, was engaged in some kind of jury nullification. They felt that the murder conviction imposed sufficient criminal liability on the defendant and didn't want to create greater sentencing liability by finding that he personally discharged a firearm that resulted in death. Moreover, it's even clearer why we don't hold the finding on the special interrogatory against the murder conviction in a case like this one where they're not even inconsistent. As Your Honor noted, there was an accountability instruction. The accountability instruction clearly and correctly articulated accountability law under Illinois law. The element that the jury would have had to find to impose the firearm and sentencing enhancement is that the petitioner personally discharged a firearm. To find him guilty of murder, they had to find that defendant or one for whom he was criminally, legally responsible, had committed the acts that resulted in the victim's death. Which is to say, the jury didn't have to find petitioner guilty of murder, beyond a reasonable doubt that petitioner himself killed the victim. And Bannon pleads, right? Bannon has the 25-year sentence? I'm sorry. The co-defendant. Yes, Bronson pleads guilty. I'm sorry, Bronson. I believe that's his name. It is his name, I'm sorry. But he pleaded guilty. Yes, Your Honor. And got, for his cooperation, a favorable sentence. Yes, Your Honor. But his statement is corroborated by video evidence at the casino that shows a petitioner approaching the table where the victim and his colleagues were winning money. By the petitioner's cell phone, which is found at the scene of the murder. By the firearm used in the murder, which is found in petitioner's apartment. Along with a photo that matched the photo on petitioner's cell phone. As well as eyewitness testimony that is consistent with the course of events that Bronson described. So, the jury only had to, they didn't have to find petitioner, beyond a reasonable doubt that petitioner killed the victim. They didn't have to find beyond a reasonable doubt that Bronson killed the victim. The jury didn't even have to agree on which of the two of them was the murderer. And in fact, any individual juror could have been uncertain which of the two was the murderer so long as they found beyond a reasonable doubt that either petitioner or Bronson and not some unnamed third person had killed the victim. Sounds like a compromise verdict to me. I mean, it's, the only trouble with this, which I think is what your opponents are focusing on, is the state didn't argue any of this, you know, in the trial. Two responses, Your Honor, to sort of the two parts of the question. First off, I agree, this very well might have been a compromise verdict. We find him guilty of murder, but either we don't want to impose the greater sentence or maybe Bronson told the truth except when he got to the part where he sort of exonerated himself from actually getting out of the car and pulling the trigger. So, we're not totally sure about that part. But one of the two of them did it, not some third person. We find beyond a reasonable doubt they were responsible for each other's conduct and therefore we've got a guilty verdict on murder. We're not sure about this personal discharge. That's absolutely what this feels like and it is certainly a possibility, which is why these inconsistent verdict kind of cases don't provide a basis for overturning the murder conviction. It is true that, it is true that the state argued in closing throughout trial that Petitioner pulled the trigger. But of course, the prosecutor's statements aren't the evidence. The jury is clearly instructed on that fact and that the evidence is the evidence. The jury was instructed at the state's request on an accountability theory. The evidence is plainly sufficient viewed in the light most favorable to the state to support a conviction on an accountability theory. So, if the argument is a sort of general counsel should have challenged the sufficiency of the evidence in this case kind of claim, that is clearly not stronger than the claims that were raised. The evidence here plainly was sufficient viewed in the light most favorable to the state to convict the Petitioner. It is also worth noting that the district court addressed an ineffective assistive appellate counsel claim on a sort of generalized sufficiency kind of claim basis. Rejected it. Did not grant a certificate of appealability on that question. Petitioner asked this court to expand the certificate of appealability to cover that sort of generalized sufficiency question. This court declined to do so. Illinois courts are clear that inconsistent verdict cases and sufficiency cases are separate questions under Illinois law and that you can't receive relief on this kind of inconsistent verdict kind of argument. So, Petitioner can't simply sort of label this a sufficiency case and take this inconsistent verdict claim which was plainly foreclosed by Illinois law and so counsel was not ineffective for failing to raise it on the claims that were raised and replace it with a general sufficiency claim. But even if... But almost nothing was raised. I mean, just excessive sentence and this little tiny correction that does get made. Sure. I mean, at least, Your Honor, those claims weren't expressly foreclosed by Illinois case law and since the standard is with this claim obviously and plainly more meritorious than the claims that were raised on that front, it is not. But in any event, counsel can't be ineffective for failing to raise a meritless claim and this claim clearly was. I mean, it is worth noting, I think that this is properly labeled. The underlying claim, the inconsistent verdict claim, would be properly addressed as a state law claim, frankly. The question is whether a guilty verdict on murder and not applying the firearm enhancement, both of which are Illinois statutes, creates an inconsistent verdict such that you have to overturn the murder conviction. That's an Illinois law question. The post-conviction trial court held that that underlying claim was meritless. This court can't review that state court determination of state law. So once we accept that that underlying claim was meritless, it was not objectively unreasonable for the court to hold that appellate counsel wasn't ineffective for not raising it. Unless the court has any further questions, we would ask that this court affirm the judgment of the district court. Thank you. Thank you, Your Honors. Ms. Manion. Thank you. A few points, Your Honors. First, as to the existence of the accountability instructions and accomplice liability theory particularly, we would point the court to the fact that we also have an estoppel issue here and that was not raised in counsel's argument. We put it in both our affirmative brief and the reply. Here we have an issue where the state, in opposing on direct appeal in the state court, the state walked away from any idea that accomplice liability could possibly have served the basis of the conviction here. In opposing the excessive and rather defending the sentence that was imposed for 60 years, the maximum for first-degree murder, the state affirmatively opposed this theory that accomplice liability served a role. And they won, right? So they make an affirmative position. They won on it. The sentence was affirmed. It was only here in federal habeas proceedings that the state is now taking a pivot to say, oh, no problem. It could have been a conviction for accomplice liability. We think estoppel principles play some role here and that should prevent this about face by the government. And we point the court to the Palmer case for that proposition. Two related issues, Your Honors. Was this idea of inconsistent verdicts expressly foreclosed? We think not. There is case law such as people v. peoples and people v. Allen. We think they're factually analogous. And those types of cases should have been researched and cited by the appellate counsel in raising a direct appeal, not only just technically to the sentence, but to the underlying conviction. And finally, just sort of a technical point about expanding the certificate of appealability. It is true that this court denied a review of the excessive sentence challenge and then also for prosecutorial misconduct. I don't think, however, that there was ever sort of any delineation between a sufficiency challenge strictly predicated on inconsistent verdicts versus inconsistent verdicts plus the sufficiency of the trial record. And for that reason, we think it's appropriate for your review and that the Strickland claim is viable. The writ should be granted. All right. Thank you very much. Ms. Mannion, I believe the court appointed you or recruited you to represent your client in this case, and you have our thanks for your representation and your service to the court. All right. Thanks to you, too, Mr. Fisher, and thanks to all counsel the case has taken under advisement.